IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MELINDA FLOYD (PENNINGTON)                                              PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:05CV100-SAA

JO ANNE B. BARNHART,
Commissioner of Social Security                                         DEFENDANT

**MEMORANDUM OPINION**

      This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Melinda Floyd Pennington for disability insurance under Title II and Supplemental Security Income benefits under Title XVI of the Social Security Act. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

**STATEMENT OF THE CASE**

      Plaintiff Melinda Floyd Pennington protectively filed her application for disability insurance benefits on April 9, 2003, alleging that she became disabled on March 1, 2003, due to "pain in her neck, numbness and pain in her arms and hands, and numbness in her legs and feet." (Pl.'s Brief at 1.) Her claim was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge. The plaintiff's hearing on this matter was held before administrative law judge (ALJ) Milan M. Dostal on November 8, 2004, where she was represented by attorney Gary Parvin.

Born on August 12, 1964, the plaintiff was forty years of age at the time of the ALJ's decision issued on January 26, 2005, wherein the ALJ found that the claimant was not disabled within the meaning of the Social Security Act in that she could return to her past relevant work as a furniture seamstress or to her then current employment as a waitress/cook on a full-time basis.[1]

The plaintiff's request for review by the Appeals Council was denied on July 20, 2005; thus, the ALJ's decision became the final decision of the Commissioner and was appealed to this court. At the request of the Commissioner, this court remanded plaintiff's claim on October 18, 2005, so that the Commissioner could enter significant evidence into the record in order to complete the record. Upon this evidence being entered, the court vacated the previously-entered order for remand and reinstated the case so that it is now ripe for this court's review.

Plaintiff's brief asserts that the ALJ erred in (1) finding that plaintiff's part-time work as a cook/waitress constituted substantial gainful activity,[2] (2) relying upon plaintiff's return to part-time work as a cook/waitress as the "sole basis for finding that she was able to return to work on a full-time basis" at step four of the sequential evaluation process, and (3) failing to explain his basis for rejecting a treating physician's opinion regarding whether plaintiff's impairments equaled the requirements of Listing 1.04 and failing to obtain another medical expert opinion on that precise subject. (Pl's Brief at 1.)

---

[1]Plaintiff began working part time as a waitress/cook on January 6, 2004, through the date of the ALJ's decision.

[2]This issue is no longer in dispute in that the Commissioner concedes that the ALJ incorrectly found that plaintiff had engaged in substantial gainful activity since her application for benefits.

## DISCUSSION

A.  Standard of Review

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence in the record as whole and whether the Commissioner used the correct legal standard. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000)). However, a decision is not substantially justified if the facts are not fully and fairly developed. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing *Newton v. Apfel*, 208 F.3d 448, 458 (5th Cir 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence leans against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

B.  Five-Step Sequential Evaluation Process

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). First, plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1527. Second, the plaintiff must prove her impairment or combination of impairments is "severe" in that it has more than a minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1527; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). At step three, the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(d). Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e). If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(f). If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff must then prove that she cannot, in fact, perform that work. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

C.      Individual Issues Considered

   1.   *Whether the ALJ Solely Relied upon Plaintiff's Return to Part-Time Work in Finding That She Was Able to Return to Full-Time Work.*

The plaintiff contends that error occurred at the fourth step of the sequential evaluation process in that the ALJ's sole basis for finding that she could return to full-time work was her performance of part-time work and that simply engaging in part-time employment below that of substantial gainful activity as construed by the applicable regulation is an erroneous basis for precluding benefits.[3] (Pl.'s Brief at 7.) At the heart of this controversy is this statement made by the ALJ:

> In addition, it is the opinion of the ALJ that the substantial part-time work that the claimant is now performing clearly demonstrates that the claimant is not only capable of performing her present cook/waitress job on a full-time basis, she also has the capability to return to her past work as a sewing machine operator (SSR96-7p).

(R. at 22.) Plaintiff also argues that the ALJ found her disabled for a period immediately preceding her engagement in part-time employment, which she began on January 6, 2004, given his statement, "Notably, the record documented that she was not able to work from March 1, 2003 through January 5, 2004, but this period does not meet the Social Security durational requirements of 12 continuous months." (R. at 22.)

In order for the ALJ's assessment of a plaintiff's residual functional capacity to be sustained, there must be substantial evidence of each physical requirement listed in the regulations. 3 SOCIAL SECURITY LAW AND PRACTICE § 43:14 (Timothy E. Travers *et al.* eds.,

---

[3]The Commissioner agrees in her response that plaintiff's part-time employment fell beneath the regulatory level of substantial gainful activity.

2005) (citing *Marks v. Apfel*, 13 F. Supp. 2d 319 (N.D.N.Y. 1998)). A non-examining physician's report cannot, standing alone, constitute substantial evidence in the Fifth Circuit. *Johnson v. Harris,* 612 F.2d 993, 996-98 (5th Cir. 1980). Social Security Ruling 96-8 requires that the ALJ include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Finally, the ALJ's decision must stand or fall based upon the reasons set forth within that decision. *Newton*, 209 F.3d at 455 (5th Cir. 2000).

The analysis on this issue turns to whether substantial evidence supports the ALJ's residual functional capacity determination. The court agrees with the plaintiff and finds that the ALJ, by his own explicit language, found her not capable of performing work from March 1, 2003, to January 5, 2004, and the Commissioner is thus bound to the same conclusion. Moreover, the Commissioner concedes that an ALJ cannot find, without more, a claimant capable of returning to full-time work based solely upon engagement in part-time work.

Assuming, arguendo, that the ALJ did not erroneously utilize the plaintiff's return to part-time work as the sole basis for his conclusion that she could engage in her past relevant work, many of the reasons put forth in the ALJ's decision that would otherwise constitute substantial evidence supporting this determination predate January 6, 2004, the approximate date for when she entered part-time employment. For instance, the ALJ states that he agrees with the findings of the state agency physicians as to her residual functional capacity; however, the state agency residual functional capacity determination was issued on June 20, 2003, during the time period in which the ALJ specifically found her incapable of working. Furthermore, the ALJ's use of the plaintiff's testimony regarding her daily activities and life style does not provide substantial

6

evidence for all of his conclusions as to her ability to work.  For example, the plaintiff testified that she cannot and does not carry more than five pounds at her part-time job, yet the ALJ deemed her capable of lifting ten pounds frequently and up to 20 pounds occasionally without the support of any evidence other than the above-mentioned state agency determination, unless this court is to believe that walking one's dog or changing a litter box demonstrates such capability.  There is simply not substantial affirmative evidence supporting the ALJ's findings on each physical requirement listed in the regulations given his determination that she could not work from March 1, 2003, to January 5, 2004.  For these failings, this case should be remanded to the ALJ for a proper analysis as to the plaintiff's residual functional capacity.

>   2. *Whether the ALJ Erred in Failing to Explain His Basis for Rejecting a Treating Physician's Opinion Regarding the Medical Equivalency of Plaintiff's Impairments.*

The plaintiff asserts that the ALJ erred in failing to articulate his reasoning for not crediting treating physician Dr. Gore's opinion that she suffered from impairments that were the medical equivalents of the listing requirements for 1.04A and 1.04B.  In his decision, the ALJ stated that "Dr. Gore concluded that that the claimant's impairments medically equaled the requirements of section 1.04A of the Listings," and he then proceeded to discuss the evidence of record in regard to plaintiff's residual functional capacity.  (R. at 21.)  The ALJ specifically found that the plaintiff suffered from numerous impairments but that these impairments were not so severe as to meet or medically equal a listed impairment.

In order to qualify for benefits by establishing medical equivalency under the third step, "a claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citations omitted)

(emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.*

An ALJ may reject or assign little weight to the opinion of a treating physician when good cause is shown; good cause may exist "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000) (internal citations omitted). In *Newton*, the Fifth Circuit held that, "absent reliable medical evidence from a treating or examining physician," the ALJ may reject a treating physician's opinion "only if the ALJ performs a detailed analysis of the treating physician's view under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)," which is:

> (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Id.* at 453.

The court agrees that the ALJ should have specifically explained his reasons for not finding medical equivalency as doing so ensures that reviewing courts can properly perform their role. This court cannot determine whether sufficient, if any, good cause exists which would allow the ALJ to discount treating physician Dr. Gore's opinion as to medical equivalency. The question at step three is whether the plaintiff's impairments meet each criterion of the listing, and the ALJ's discussion as to the plaintiff's residual functional capacity does not resolve this inquiry. The pertinent medical records from 2003 to 2004, especially those containing

assessments by Drs. Gore, Horn and Eckman, certainly indicate that the plaintiff had severe impairments including, but not limited to, degenerative joint disease, neck pain and congenital cervical anomalies or abnormalities, which in their totality demonstrate that the plaintiff is extremely limited. The plaintiff told Dr. Horn on August 22, 2003, that Dr. Eckman's office had informed her that Dr. Eckman did not "do disability," and this assertion coupled with Dr. Eckman's assessments leave open a great possibility that Dr. Eckman would have agreed with Dr. Gore's opinion as to plaintiff's medical equivalency. Moreover, Dr. Gore's assessments were made with knowledge of the previous objective medical findings by Drs. Eckman and Horn. The simple fact the ALJ possessed only one medical source statement as to whether the plaintiff met or equaled the listings and chose to wholly discredit that solitary opinion without any substantive analysis renders this portion of his determination groundless. Consequently, the court finds remand as to this issue proper so that the ALJ may fully explain his rationale for discounting Dr. Gore's findings.

> 3. *Whether the ALJ Erred in Failing to Obtain Additional Medical Expert Opinion Regarding the Medical Equivalency of Plaintiff's Impairments.*

The plaintiff also argues that the present action must be reversed and remanded due to the ALJ's failure to obtain additional medical expert opinion on the issue of whether plaintiff's impairments medically equaled Listing 1.04 upon discrediting Dr. Gore's opinion without explanation. Plaintiff asserts that the state agency physicians "reviewed an incomplete record and did not review the bulk of the evidence in this case," specifically Exhibits 5F, 6F, 7F, 8F, 9F or 10F which include Dr. Gore's opinion as to Listing 1.04. (Pl.'s Brief at 11.)

9

The plaintiff accurately cites 20 C.F.R. § 404.1526(b) as requiring the ALJ to consider an expert's opinion on the issue of medical equivalency and notes, correctly, that "longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p. An ALJ satisfies this requirement to receive expert opinion by – among other ways – including within the record a Disability Determination and Transmittal Form bearing the signature of a state agency medical consultant. *Id.* An ALJ is not bound by the state agency's findings but must explain the weight accorded to them in his decision. *Id.* The applicable Social Security Ruling mandates that an ALJ obtain updated medical opinion evidence only in two circumstances:

> (1) when no additional medical evidence is received, but in the opinion of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> (2) when additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

*Id.* The lack of additional expert opinion supporting the ALJ's determination is considered when determining whether substantial evidence exists to support his findings. However, because the court has reversed the ALJ's decision on other grounds, there is no call to address this ground.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is reversed and remanded for the ALJ to explain his rationale for discounting Dr. Gore's findings in reaching his conclusion that plaintiff's impairments do not meet or equal the requirements of Listing 1.04 in severity and analyze the plaintiff's residual functional capacity and her ability to engage in past relevant work or work that exists in significant numbers in the national economy. A separate order of judgment reversing the Commissioner's final decision shall issue contemporaneously with this opinion.

This, the 14th day of July, 2006.

    /s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE